IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    Plaintiff,

Vs.                                             No. 08-40050-01-SAC

DAVID B. ENDSLEY,

                    Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's unresolved objections to the presentence report ("PSR") as appearing in the PSR addendum. The defendant is a nineteen-year-old male charged in a two-count information with the misdemeanor offense of criminal interference with the right to fair housing, 42 U.S.C. § 3631, and with the felony offense of making a false statement to a special agent of the Federal Bureau of Investigation ("FBI") during an interview on or about August 13, 2007. The defendant pleaded guilty on July 2, 2008, to both counts.

The final revised PSR distributed in October of 2008 groups the two counts pursuant to U.S.S.G. § 3D1.2 which instructs a court to group counts involving substantially the same harm. The PSR determines the

offense level and adjustments applicable to the misdemeanor count one and treats the felony count two as an obstruction of justice enhancement. The PSR recommends the following: a base offense level of 12 under U.S.S.G. § 2H1.1 for involving two or more participants, a two-level increase pursuant to U.S.S.G. § 3A1.3 for restraining the victim, a three-level increase pursuant to U.S.S.G. § 3A1.1(a) for selecting a victim because of his race, a two-level increase pursuant to U.S.S.G. § 3B1.1(c) for an organizer and leader role, a two-level increase pursuant to U.S.S.G. § 3C1.1 for obstruction of justice for his false statements to the FBI officer, and a three-level decrease pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. With a total offense level of 18 and a criminal history category of one, the advisory sentencing guideline range is 27 to 33 months.

      The defendant has five unresolved objections to the PSR, and he also seeks a downward departure and a sentencing variance. The government opposes the defendant's objections as set forth in the PSR addendum. The government also opposes the defendant's filings that seek a downward departure and variance. The court intends this order to address only the unresolved objections.

**OBJECTION ONE:** The defendant notes that the victim impact statements from J.L. and his former foster parents leave the impression that much of the blame for J.L.'s subsequent and continuing behavioral problems rests significantly with this incident. Because these opinions on resulting harm are being offered for the sentencing court's consideration, the defendant believes the court should also be provided for its evaluation the victim's background and record of improper conduct prior to the incident.

The government responds that no additional information about the victim should be included in the PSR. The government observes that the victim has a right to make a statement about how he feels the crime impacted him. It should be noted that the defendant is not making a request for more information in the PSR, nor is he taking issue with the victim's right to address the court. Finally, the government maintains that "the defendant does not have a parallel right to counter the information provided by the victim, especially not with extrinsic evidence." (PSR ¶ 84). The government offers no citation following this assertion of what it believes the defendant's rights are in this matter.

The PSR writer "believes it would be inappropriate for the Court

to obtain additional background information on the victim." *Id.* at ¶ 85.  The writer offers, "[r]egardless of the history of the victim, the sentencing in this case is about the defendant, and his actions and criminal conduct, not about the conduct of the victim." *Id.*  This overstates the defendant's position.  Rather than wanting the victim judged, the defendant is asking the court to make an informed evaluation of the allegations of harm submitted by the victim and the former foster parents.

**Ruling**:  By statute, the victim has the "right to be reasonably heard at any public proceeding in the district court involving . . . sentencing" and the "right to be treated with fairness and with respect for the victim's dignity and privacy."  18 U.S.C. § 3771(a)(4), (8).  Plainly, this statute establishes certain rights for crime victims.  At the present time, no one is alleging any violation of this statute or the denial of any rights afforded under it.  The government does not refer to any provision within this statute or any other statute that necessarily impinges on a defendant's right to refute by argument and relevant information any matter offered for the court's consideration at sentencing.  Granted, all presentations with regard to the victim of the crime are subject to the statutory parameters that the victim is

treated fairly and with respect for the victim's dignity and privacy.[1]  This court has presided over sentencing hearings that involved factual disputes over the impact suffered by the victim.

"In federal practice, a defendant's 'due process right to be sentenced based upon accurate information' is 'safeguard[ed]' by Federal Rule of Criminal Procedure 32, which 'contains specific requirements that ensure that the defendant is made aware of the evidence to be considered and potentially used against him at sentencing, and is provided an opportunity to comment on its accuracy.'"  *United States v. Ausburn*, 502 F.3d 313, 322 (3rd Cir. 2007) (quoting *United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001)), *cert. denied*, 129 S. Ct. 32 (2008).  The principal

---

[1] "Rule 32 contemplates full adversary testing of the issues relevant to a Guidelines sentence and mandates that the parties be given 'an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'" *Burns v. United States*, 501 U.S. 129, 135 (1991) (quoting Fed. R. Crim. P. 32(a)(1) (1991) and currently found at Fed. R. Crim. P. 32(i)(1)(C)).  Congress has provided that "[n]o limitation shall be placed on the information concerning the . . . conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661. This is in keeping with the court's duty to set a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.  See 18 U.S.C. § 3553(a).  The defendant here should have every reasonable opportunity to challenge the government's argument that the crime here had "life-altering implications for the young victim." (Dk. 17, pp. 3-5).

safeguard established in Rule 32 is the presentence investigation and the PSR prepared from it. *Id.* The PSR must contain "verified information, stated in a nonargumentative style, that assesses the financial, social, psychological, and medical impact on any individual against whom the offense has been committed." Fed. R. Crim. P. 32(d)(2)(B). The defendant's objection does not cite this provision nor state that PSR fails to meet Rule 32 requirements. What the defendant does argue is not persuasive in showing the court has a *sua sponte* obligation on these facts to obtain the victim's personal files.

It is noteworthy that Rule 32 requires the PSR to include "verified information . . . that assesses the . . . impact on " a victim. While the instant PSR does not separately evaluate or estimate the impact on the victim, it does include in some detail the statements of the minor victim and his former foster parents.[2] The statements are consistent in summarizing the events and the observed changes in the victim's behavior that occurred after the incident. The minor victim's statement more directly blames this incident for his inappropriate behavior and for the consequences imposed

---

[2]For the record, the court reads the PSR to be a summary of the victim impact statements and to not be an independent assessment or evaluation of the asserted impact.

for his behavior. While the victim may offer such an opinion in his impact statement, the defendant certainly has the right to challenge the reliability of that causation opinion by argument or evidence, so long as the victim's "right to be treated with fairness and with respect for the victim's dignity and privacy" is preserved. It should be expected that the court will evaluate the victim impact statements against the same standards of reliability and reasonableness applied to all matters introduced at sentencing hearings.

**OBJECTION TWO:** The defendant objects to the enhancement for the victim being targeted for his race. The defendant argues the PSR shows that the victim was targeted principally for his offensive conduct earlier at the party and that the victim's race was only a secondary motive behind the incident. At the same time, the defendant concedes race was involved in the incident to the extent admitted by him at the change of plea hearing. Finally, the defendant summarily challenges that this enhancement "double counts" an element required for commission of the offense.

In opposing the objection, the government highlights from the plea agreement the defendant's admissions to directing and yelling racial epithets and slurs at the victim throughout the incident. The defendant

further admitted to making these comments and also saying that the victim "should 'go back home' and 'go back where [he] came from,' meaning that J.L. should leave the home and the community where lived and should return to the community where he lived before." (Dk. 9, p. 11).  In pleading guilty to count one, the defendant admitted the government could prove his actions were racially motivated.

The PSR writer addresses the double counting argument. Though racial intent is a statutory element of count one, this element was not considered in applying the offense conduct guideline of U.S.S.G. § 2H1.1.  The terms of this guideline do not show it was intended to address all crimes motivated by hate.  Instead, application note four to U.S.S.G. § 2H1.1 expressly allows for a hate crime enhancement under U.S.S.G. § 3A1.1(a).

**Ruling**:  The relevant commentary to the Guidelines explains that "[a]bsent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively.  In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct." U.S.S.G. § 1B1.1, comment. (n. 4(B)).  "[T]he general rule [is] that 'the

Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended.'" *United States v. Groves*, 369 F.3d 1178, 1186 (10th Cir. 2004) (quoting *United States v. Duran*, 127 F.3d 911, 918 (10th Cir.1997), *cert. denied*, 523 U.S. 1061 (1998)).  Consequently, "if a particular guideline specifically speaks to double counting, such an instruction would be controlling." *United States v. Coldren*, 359 F.3d 1253, 1256 (10th Cir.), *cert. denied*, 543 U.S. 847 (2004).

>The commentary to U.S.S.G. § 2H1.1 provides:

>If the finder of fact at trial or, in the case of a plea of guilty or <u>nolo contendere</u>, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense because of the actual or perceived race, . . . of any person, an additional 3-level enhancement from § 3A1.1(a) will apply.

U.S.S.G. § 2H1.1,comment. (n. 4).  This application note expressly and unreservedly contemplates applying the racial targeting enhancement under § 3A1.1(a) to offenses covered by § 2H1.1.  Additionally, the commentary to § 3A1.1(a) explains this enhancement will apply to hate crimes subject to two exceptions having no relevance here:

>Subsection (a) applies to offenses that are hate crimes.  Note that special evidentiary requirements govern the application of this subsection.

> Do not apply subsection (a) on the basis of gender in the case of a sexual offense. In such cases, this factor is taken into account by the offense level of the Chapter Two offense guideline. Moreover, do not apply subsection (a) if an adjustment from § 2H1.1(b)(1) applies.

U.S.S.G. § 3A1.1, comment. (n. 1). As demonstrated by these provisions, the Sentencing Commission does not forbid, but expressly allows, the victim selection enhancement in § 3A1.1 for hate crimes covered under § 2H1.1. The court overrules the defendant's double-counting objection.

As the background to § 3A1.1 explains, this enhancement is intended to apply when "the defendant had a hate crime motivation (<u>i.e.</u> a primary motivation for the offense was the race, color, . . . of the victim)." U.S.S.G. § 3A1.1, comment. (backg'd.). The sentencing court is to apply this enhancement upon a finding beyond a reasonable doubt that the defendant "intentionally selected any victim . . . because of the actual or perceived race, . . . of any person." U.S.S.G. § 3A1.1(a). The following taken from the agreed factual basis of the offense presented at the defendant's change of plea hearing persuades the court beyond a reasonable doubt that the defendant "intentionally selected" J.L. as the victim primarily because of J.L.'s race:

> At approximately 2:00 a.m. on May 20, the defendant found J.L. asleep on the ground and placed J.L. in a lawn chair. After placing J.L. in the chair, the defendant stated that he was going to "tie the

>nigger up." . . . .
>    Once J.L. was tied to the lawn chair, a crowd of people began to form around him and the defendant. The defendant then incited the crowd of people to direct racial epithets at J.L. and to urinate on him by repeatedly stating, "let's piss on the nigger."
>    . . . After the defendant finished painting J.L., he remarked that "th[e] nigger got what he deserved."

(Dk. 9, p. 10). The court overrules the defendant's objection.

**OBJECTION THREE**: The defendant objects to the two-level enhancement for organizer or leader under U.S.S.G. § 3B1.1(c). The defendant disputes any characterization of the incident on May 19, 2007, as being organized or led. The defendant emphasizes that the incident involved unsupervised high school students and recent graduates who were drunk, leaderless and unsupervised. The defendant denies that the PSR shows he was the "leader of anyone in this incident, including himself." (PSR Addendum, ¶ 91).

In opposing the objection, the government recites from the agreed factual basis that the defendant had incited the crowd to shout racial epithets and to participate in the criminal conduct. The PSR writer describes the defendant's actions and offers that the "defendant is clearly the most culpable of the defendants charged in this offense." The writer also concludes that the defendant's actions caused the events "to escalate"

11

into criminal conduct and "his leadership encouraged others" to join.  (PSR Addendum, ¶ 94).

**Ruling**:  "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." U.S.S.G. § 3B1.1(c).   The burden of proving this enhancement by a preponderance of the evidence rests with the government.  *United States v. Anderson*, 189 F.3d 1201, 1211 (10th Cir. 1999). The PSR recommends the enhancement based on a finding of either a leader or organizer.  This enhancement is intended to address "either the exercise of control over other participants or the organization of others for the purpose of carrying out the crime."  *United States v. Tagore*, 158 F.3d 1124, 1131 (10th Cir.1998) (citations omitted).

"[T]he sentencing court should remain conscious that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals, and the enhancement is not for important or essential figures."  *United States v. Albers*, 93 F.3d 1469, 1488 (10th Cir. 1996) (quotations, citations, and emphasis omitted).  That the defendant may be more culpable than another participant does not necessarily trigger a U.S.S.G. § 3B1.1 enhancement, unless the culpability

is the defendant's control or organization of others. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n.2). "This means that the enhancement applies only when the defendant had 'decision-making authority or control over a subordinate.'" *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir. 2008) (quoting *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir.1993)).

Application note four to U.S.S.G. § 3B1.1 identifies the following factors as relevant in deciding whether someone is a leader or organizer as opposed to a manager or supervisor: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n. 4). The enhancement for organizer is intended for someone who serves in "devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the

implementation of the conspiracy." *United States v. Valdez-Arieta*, 127 F.3d 1267, 1272 (10th Cir. 1997). "'An organizer arranges a number of people engaged in separate activities into an essentially orderly operation.'" *United States v. Hutching*, 75 F.3d 1453, 1458 (10th Cir.) (quoting *United States v. Smith*, 24 F.3d 1230, 1233 (10th Cir.), *cert. denied*, 513 U.S. 905 (1994)), *cert. denied*, 517 U.S. 1246 (1996). "It is not necessary to find the defendant exercised control over other participants to qualify for an organizer enhancement." *United States v. Tagore*, 158 F.3d at 1131 (citing *United States v. Valdez-Arieta*, 127 F.3d at 1272).

The court sustains the defendant's objection, as the facts appearing in the PSR fail to persuade the court that the defendant was a leader or organizer of the criminal activity occurring on May 19, 2007. What the government argues as the facts proving the defendant's role of a leader or organizer show no more than someone who incited the intoxicated crowd to shout and who cajoled several of his fellow drunken partygoers into joining him in this single, sad and disgusting event. While having agreed at the change of plea hearing that he was an inciter and cajoler, the defendant never agreed he was a leader or organizer. As application note four to U.S.S.G. § 3B1.1 recognizes, this role adjustment

"does not apply to a defendant who merely suggests committing the offense." As prescribed in Tenth Circuit case law, this enhancement does not extend to all important or essential figures, but it is for those who control or organize others in the criminal activity.

This court is not persuaded that the defendant became a leader during this single incident simply because he was the first to suggest or perform one of the acts of verbal and physical abuse involved in the incident. That he excited the crowd and cajoled others to join him are not acts of a leader or organizer in the context of this incident. The PSR does not show the defendant exercised any meaningful degree of control or authority over any other participant or that he organized, assigned or arranged other participants during this criminal activity. Indeed, the court does not infer from the PSR that any of the defendant's criminal activity could really be described as planned or organized. Rather, the court's impression is that the defendant and the others were intoxicated and then acted uninhibitedly on the basest of impulses. Controlled, organized, orchestrated, or planned are not adjectives that could be used to describe the perverse, unbridled, disgusting and aberrant actions of intoxicated high school teenagers in the early morning hours of a graduation party. The

court sustains the defendant's objection to the 3B1.1 enhancement.

**OBJECTION FOUR**:  The defendant objects to the two-level obstruction of justice enhancement for making false statements during the investigation as somehow double counting the actions for which he was convicted.  The government opposes the objection saying the enhancement is appropriate due to the defendant's false statement conviction.  The PSR writer explains that the obstructive conduct is not considered in the base offense level calculated under the offense guideline of U.S.S.G. § 2H1.1, so no double counting has occurred.

**Ruling**:  The defendant pleaded guilty to two offenses:  count one, criminal interference with the right to fair housing in violation of 42 U.S.C. § 3631, and count two, making a false statement to an FBI agent in violation of 18 U.S.C. § 1001.  The PSR groups the two counts as involving substantially the same harm on several grounds, including U.S.S.G. § 3D1.2(c), because the false statement conviction of count two is "treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to" the interference with the fair housing conviction of count one.  On its face, the PSR shows that the defendant's false statements have not been double-counted.  The PSR calculates the base offense level and

victim-related adjustments on the basis of count one and the events occurring on May 19, 2007, but the adjustment for obstruction of justice is calculated on the basis of count two and the false statements given on August 13, 2007. Thus, the defendant's false statement conviction was counted only once in the guidelines as an obstruction adjustment.

As noted above, "if a particular guideline specifically speaks to double counting, such an instruction would be controlling." *United States v. Coldren*, 359 F.3d at 1256. Application notes five and eight to the obstruction of justice adjustment expressly address this situation:

> 5. <u>Examples of Conduct Ordinarily Not Covered</u>.--Some types of conduct ordinarily do not warrant application of this adjustment but may warrant a greater sentence within the otherwise applicable guideline range or affect the determination of whether other guideline adjustments apply . . . .  However, if the defendant is convicted of a separate count for such conduct, this adjustment will apply and increase the offense level for the underlying offense (<u>i.e.</u>, the offense with respect to which the obstructive conduct occurred). <u>See</u> Application Note 8, below.
> . . . .
> 8. <u>Grouping under 3D1.2(c)</u>.--If the defendant is convicted both of an obstruction offense (<u>e.g.</u>, 18 U.S.C. § 3146 (Penalty for failure to appear); 18 U.S.C. § 1621 (Perjury generally)) and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

U.S.S.G. § 3C1.1, comment (nn.5 and 8). These notes plainly establish that the Sentencing Commission expressly contemplates a defendant will receive an obstruction of justice enhancement on a separate conviction for an obstruction offense consistent with the grouping provision at U.S.S.G. § 3D1.2(c). The PSR here does not double count the false statement conviction. *See United States v. Edwards*, 303 F.3d 606, 645-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003); *United States v. Baker*, 200 F.3d 558, 562-63 (8th Cir. 2000). The defendant's objection is overruled.

**OBJECTION FIVE**: The defendant objects to using the Sentencing Guidelines as they are only discretionary and do not limit a court's sentencing authority like statutes and the rules of reasonableness.

**Ruling**: The court summarily overrules the defendant's objection. The Supreme Court has continued to clarify the role of the sentencing guidelines after *United States v. Booker*, 543 U.S. 220 (2005). Though the sentencing guidelines are only "advisory," *Rita v. United States*, 551 U.S. 338, ----, 127 S.Ct. 2456, 2467 (2007), or "effectively advisory," *Booker*, 543 U.S. at 245, and are only "one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, --- U.S. ----, ----, 128 S.Ct. 558, 564 (2007), the Supreme Court has

nevertheless instructed that a correct calculation under the sentencing guidelines is the sentencing court's "starting point and the initial benchmark."  *Gall v. United States*, --- U.S. ----, ----, 128 S.Ct. 586, 596 (2007).  The sentencing court must afford an opportunity for both sides to advocate an appropriate sentence and then "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."  *Id*.  The sentencing court may not presume the reasonableness of a guideline sentence but "must make an individualized assessment" of the factors on the facts as presented.  *Id*. at 596-97.  Should a non-guideline sentence be considered appropriate,[3] the sentencing court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Id*. at 597.  The sentencing court then "must adequately explain the chosen sentence to

---

[3]In *Kimbrough*, the Court observed that the guideline range in an ordinary case is "'a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  128 S.Ct. at 574 (quoting *Rita*, 127 S.Ct., at 2465).  In contrast, a sentencing judge is more familiar with the particular case and the defendant than either the Sentencing Commission or the court of appeals.  *Id*.  Consequently, the sentencing court is "in a superior position to find facts and judge their import under § 3353(a)" under the facts of each individual case.  *Id*. (quotation omitted).  Thus, a sentencing court's decision to vary from the guidelines deserves the "greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply."  *Id*. (quotation omitted).

19

allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*  The court will consider the advisory guideline sentencing range in accordance with these Supreme Court decisions.

As a result of the above rulings, the defendant's total offense level is 16 and the resulting guideline range is 21 to 27 months.  At the sentencing hearing on March 17, 2009, the court will hear the parties' presentations with regards to the defendant's request for a downward departure or variance.

IT IS THEREFORE ORDERED that the defendant's objections to the PSR are overruled except for his third objection to the leader or organizer enhancement which is sustained.

IT IS FURTHER ORDERED that the sentencing hearing will be held on Tuesday, March 17, 2009, at 2:00 p.m.

Dated this 17th day of February, 2009, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge